IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED THERAPEUTICS CORPORATION,  )
                                  )
          Plaintiff,              )
                                  )
v.                                )          1:25-cv-00368
                                  )
LIQUIDIA TECHNOLOGIES, INC.,      )
                                  )
          Defendant.              )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This patent infringement case is before the court on the motion of Defendant Liquidia Technologies, Inc. ("Liquidia") to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, to stay or transfer the action to the District of Delaware. (Doc. 28.) Liquidia seeks dismissal, stay, or transfer on several procedural grounds, namely the rule against claim-splitting, the first-filed rule, claim preclusion, issue preclusion, and the Kessler doctrine. (See Doc. 29.) Plaintiff United Therapeutics Corp. ("UTC") has filed a response in opposition (Doc. 56), and Liquidia replied (Doc. 58). UTC has also filed a sur-reply. (Doc. 68.) The court held a hearing on November 17, 2025.[1] For the reasons set forth below, the motion will be denied.

---

[1] The hearing also addressed UTC's motion to dismiss or, in the alternative, to stay in the related case Liquidia Technologies, Inc. v. United Therapeutics Corp., civil action number 1:25-cv-00299.

## I.  BACKGROUND

### A.  Hatch-Waxman Framework

Pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), a drug manufacturer must submit a New Drug Application ("NDA") to the Food and Drug Administration ("FDA") for approval.  21 U.S.C. § 355(a).  The NDA must include the patent number and expiration date of any patent that claims the drug or a method of using the drug with respect to which a claim of patent infringement could reasonably be asserted.  Id. § 355(b)(1).  Upon approval of the NDA, the FDA lists this patent information alongside the approved drug in its Approved Drug Products with Therapeutic Equivalence Evaluations, commonly known as the "Orange Book."  See id. § 355(b)(1), (j)(7)(A)(i)-(iii).

The Hatch-Waxman Act amended the FDCA to provide for an alternative NDA process, allowing drug manufacturers to obtain FDA approval while relying on the investigations already conducted by a previously-approved applicant.  See id. § 355(b)(2).  As a tradeoff, the drug manufacturer seeking NDA approval through this alternative process must make one of four certifications for each patent listed in the Orange Book that claims the drug for which the investigations were conducted and upon which the manufacturer relies.  Id.  The possible certifications are: (1) "that such patent information has not been filed," (2) "that such patent has expired," (3) that the patent will expire on a specific date, or

2

(4) "that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted." Id. § 355(b)(2)(A)(i)-(iv). The fourth option is commonly known as a Paragraph IV certification. When a drug manufacturer makes a Paragraph IV certification in its NDA, it must give notice to the patent owner. Id. § 355(b)(3). The patent owner may then sue the applicant for infringement pursuant to 35 U.S.C. § 271(e)(2) within forty-five days after receiving notice, which triggers a thirty-month stay of FDA approval of the NDA. See id. § 355(c)(3)(C).

Notably, § 271(e)(2) makes the mere filing of an NDA an act of infringement "if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug . . . claimed in a patent or the use of which is claimed in a patent before the expiration of such patent." The statute therefore created "a new (and somewhat artificial) act of infringement for a very limited and technical purpose that relates only to certain drug applications." Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 671 (1990). Put differently, the provision "is designed to create an artificial act of infringement for purposes of establishing jurisdiction in the federal courts." Glaxo Grp. Ltd. v. Apotex, Inc., 376 F.3d 1339, 1351 (Fed. Cir. 2004).

3

**B. Procedural History**

In January 2020, Liquidia submitted an NDA to the FDA seeking approval of its product Yutrepia, a dry powder formulation of treprostinil used to treat certain pulmonary diseases. (Doc. 29 at 7.) At first, Liquidia included only pulmonary arterial hypertension as an indication for Yutrepia. (See id. at 10.) Liquidia relied on UTC's Tyvaso product as its reference-listed drug pursuant to § 355(b)(2), and Liquidia accordingly provided UTC with Paragraph IV certifications that the patents listed in the Orange Book for Tyvaso were invalid, unenforceable, and/or not infringed by Liquidia's Yutrepia product. (Doc. 56 at 9.)

In June 2020, UTC commenced Hatch-Waxman litigation against Liquidia in the United States District Court for the District of Delaware pursuant to § 271(e)(2), ultimately alleging that Yutrepia infringed UTC's U.S. Patent No. 10,716,793 ("'793"). (Doc. 29 at 8.) The '793 patent claimed, in relevant part:

> 1. A method of treating pulmonary hypertension comprising administering by inhalation to a human suffering from pulmonary hypertension a therapeutically effective single event dose of a formulation comprising treprostinil or a pharmaceutically acceptable salt thereof with an inhalation device, wherein the therapeutically acceptable single event dose comprises from 15 micrograms to 90 micrograms of treprostinil or a pharmaceutically acceptable salt thereof delivered in 1 to 3 breaths.
>
> . . .
>
> 4. The method of claim 1, wherein the inhalation device

4

is a <u>dry powder inhaler</u>.

(Doc. 29-3 at 26 (emphasis added).)

The court initially found that Yutrepia infringed the '793 patent. <u>United Therapeutics Corp. v. Liquidia Techs., Inc.</u>, 624 F. Supp. 3d 436, 473 (D. Del. 2022), <u>aff'd</u>, 74 F.4th 1360 (Fed. Cir. 2023), <u>cert. denied</u>, 144 S. Ct. 873 (2024) (mem.). However, the court vacated this portion of its decision after the Patent Trial and Appeal Board ("PTAB") determined, in a parallel proceeding, that the claims of the '793 patent were unpatentable. <u>United Therapeutics Corp. v. Liquidia Techs., Inc.</u>, No. 20-755, 2024 WL 1328902, at *3 (D. Del. Mar. 28, 2024); <u>see</u> <u>Liquidia Techs., Inc. v. United Therapeutics Corp.</u>, No. IPR2021-00406, 2022 WL 2820717, at *18 (P.T.A.B. July 19, 2022), <u>aff'd</u>, No. 2023-1805, 2023 WL 8794633 (Fed. Cir. Dec. 20, 2023), <u>cert. denied</u>, 145 S. Ct. 352 (2024) (mem.).

In July 2023, Liquidia notified UTC that it had amended its NDA for Yutrepia to add pulmonary hypertension associated with interstitial lung disease as an indication for Yutrepia. (Doc. 29 at 10.) UTC then filed a second action in the Delaware district court pursuant to the Hatch-Waxman Act, again alleging infringement of the '793 patent. (<u>Id.</u>) Based on the Federal Circuit's affirmance of the PTAB's unpatentable determination, however, Liquidia and UTC stipulated to the dismissal without prejudice of UTC's claim of infringement of the '793 patent. (<u>Id.</u>)

Moreover, the parties agreed that UTC could only reassert the '793 patent in the suit if the Supreme Court vacated or reversed the Federal Circuit's decision. (Id.) The Supreme Court denied UTC's petition for a writ of certiorari. (Id.)

In May 2025, UTC filed the present suit, alleging that Yutrepia infringes UTC's U.S. Patent No. 11,357,782 ("'782"). (Doc. 1 ¶ 1.) UTC obtained the '782 patent in June 2022 but did not previously assert the '782 patent in either Hatch-Waxman action. (Doc. 29 at 7.) Notably, the '782 patent has never been listed in the Orange Book for UTC's Tyvaso product, at least in part because the '782 patent claims a dry powder inhaler while Tyvaso is a nebulized mist inhalation device. (Doc. 56 at 8, 10.) In relevant part, the '782 patent claims:

> 1. A method of treating pulmonary hypertension comprising: providing an inhalation device for treating pulmonary hypertension in a human suffering from pulmonary hypertension comprising a powder formulation of treprostinil or a pharmaceutically acceptable salt thereof and a <u>dry powder inhaler</u> configured to administer single event dose of the powder formulation comprising treprostinil or a pharmaceutically acceptable salt thereof, <u>wherein the single event dose comprises at least 15 micrograms to 90 micrograms of treprostinil</u> or a pharmaceutically acceptable salt thereof <u>delivered in 1 to 3 breaths</u>, wherein the dry powder inhaler is configured to administer the entire single event dose in less than 5 minutes with at least 5 micrograms of treprostinil or a pharmaceutically acceptable salt thereof being inhaled per breath through coordinated actuation of the dry powder inhaler with each breath, and administering to a human suffering from pulmonary hypertension with the dry powder inhaler with each breath, and administering to a human suffering from pulmonary hypertension with the dry powder inhaler the

single event dose comprising at least 15 micrograms to
90 micrograms of treprostinil or a pharmaceutically
acceptable salt thereof in 1 to 3 breaths, wherein the
human administers the entire single event dose with the
dry powder inhaler in less than 5 minutes by inhaling at
least 5 micrograms of treprostinil or a pharmaceutically
acceptable salt thereof per breath by coordinating one
actuation of the dry powder inhaler for each separate
breath, and wherein administration of an additional
single event dose in the same manner occurs at least 3
hours later.

(Doc. 1-1 at 27 (emphasis added).)

Here, unlike the prior Hatch-Waxman litigation, UTC does not allege a cause of action pursuant to § 271(e)(2) and arising out of Liquidia's NDA or Paragraph IV certifications for Yutrepia. Rather, UTC now sues pursuant to 35 U.S.C. § 271(b)-(c) and the Declaratory Judgment Act, in response to Liquidia's previously-announced plan to launch Yutrepia upon the FDA's final decision on drug approval on May 24, 2025. (Doc. 1 ¶¶ 37-62.)

On November 17, 2025, this court held a hearing on Liquidia's motion to dismiss or, in the alternative, stay or transfer the action pursuant to the parties' requests. (See Doc. 76.) At the conclusion of the hearing, the court denied the motion to transfer the action to Delaware. (Id. at 73:16-17.) Moreover, Liquidia orally withdrew its request to stay the action. (Id. at 32:7-9.) This memorandum opinion and order therefore addresses Liquidia's motion to dismiss. In sum, Liquidia argues that the rule against claim-splitting, the first-filed rule, claim preclusion, issue preclusion, and the Kessler doctrine bar UTC from now asserting

claims for infringement of the '782 patent because of UTC's previous suits involving the '793 patent.

## II.  ANALYSIS

### A.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000).  Rule

12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"In appropriate circumstances, the questions of collateral estoppel and res judicata may be decided on a Rule 12(b)(6) motion to dismiss." Allergan, Inc. v. Apotex, Inc., 14-CV-1028, 2015 WL 13358250, at *2 (M.D.N.C. Aug. 31, 2015), aff'd in part, rev'd in part sub nom., Allergan, Inc. v. Sandoz, Inc., 681 F. App'x 955 (Fed. Cir. 2017); Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000) ("This Court has previously upheld the assertion of res judicata in a motion to dismiss.").

## B. Claim-Splitting and the First-Filed Rule

Liquidia argues that this action should be dismissed pursuant to the rule against claim-splitting because UTC could have sued based on the '782 patent in the still-pending, second Hatch-Waxman case in Delaware. (Doc. 29 at 19.) Further, Liquidia contends that the first-filed rule bars this suit because of the similarities with the second Hatch-Waxman case. (Id. at 17–18.) UTC counters that its claims of infringement based on the '782

9

patent involve a different transaction and could not have been brought previously. (Doc. 56 at 21-22.)

"The rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" Lee v. Norfolk S. Ry. Co., 802 F.3d 626, 635 (4th Cir. 2015) (quoting Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 273 F. App'x 256, 265 (4th Cir. 2008)). Like res judicata, "[t]he claim-splitting doctrine . . . bars a second suit, if the claim in such suit 'involves the same parties or their priv[i]es and "arises out of the same transaction or series of transactions"' as the claims in the first suit." Superior Performers, Inc. v. Fam. First Life, LLC, No. 14CV382, 2015 WL 471389, at *3 (M.D.N.C. Feb. 4, 2015) (quoting Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp., 452 F. Supp. 2d 621, 626 (D. Md. 2006)). If the claims in the second suit arise out of the same transaction or series of transactions, courts then consider "whether the 'interests of judicial economy and avoiding vexatious litigation outweigh the plaintiff's interest in bringing the second suit.'" Southard v. Wicomico Cnty. Bd. of Educ., No. SAG-15-61, 2015 WL 4993721, at *4 (D. Md. Aug. 20, 2015) (quoting Jenkins v. Gaylord Ent. Co., 840 F. Supp. 2d 873, 883 (D. Md. 2012)).

The "first-to-file" rule holds that, when a lawsuit is filed in multiple forums, "the first suit should have priority, absent

the showing of [a] balance of convenience in favor of the second action." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 594-95 (4th Cir. 2004) (quoting Ellicott Mach. Corp. v. Mod. Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974)). "Courts have applied a three-factor test for determining whether multiple cases are subject to the first-to-file rule, considering (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues being raised." Davis v. Zuccarello, 16-cv-01086, 2017 WL 2729089, at *3 (M.D.N.C. June 23, 2017). "The decision to invoke the first-filed rule is an equitable determination that is made on a case-by-case, discretionary basis." Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003).

Here, neither party disputes that the present infringement claim on the '782 patent involves the same parties and product as both Hatch-Waxman suits. (Doc. 29 at 17; Doc. 56 at 13.) However, as UTC rightly argues, this action does not arise out of the same transaction or series of transactions. (Doc. 56 at 13.) UTC now asserts a claim for infringement of the '782 patent in response to Liquidia's public announcement of its plan to launch Yutrepia. (Doc. 1 ¶¶ 30-36.) On the other hand, both Hatch-Waxman suits arose out of Liquidia's NDA and accompanying Paragraph IV certifications for its Yutrepia product. Accordingly, the previous infringement claims all involved patents that were listed

11

or could have been listed in the Orange Book with UTC's Tyvaso product, which served as Liquidia's reference-listed drug for Yutrepia. But as UTC contends and Liquidia does not dispute, the '782 patent has never been, and could not have been, listed in the Orange Book with UTC's Tyvaso product because Tyvaso is a nebulized mist while the '782 patent claims a dry powder.[2] (Doc. 56 at 16.) Thus, UTC could not have filed suit for infringement of the '782 patent pursuant to the Hatch-Waxman Act.

Nevertheless, Liquidia asserts that UTC still could have brought its claims for infringement of the '782 patent in the second Hatch-Waxman suit pursuant to the Declaratory Judgment Act. According to Liquidia, the filing of the NDA for Yutrepia created a sufficiently imminent threat of future infringement to confer jurisdiction.[3] (Doc. 58 at 5-6.) In so concluding, Liquidia does

---

[2] Liquidia correctly notes that UTC failed to list the '782 patent in the Orange Book until April 2025, despite the statutory requirement to list a patent within thirty days of its issuance. (Doc. 29 at 12-13.) But UTC could not have listed the '782 patent in the Orange Book with its Tyvaso product, which served as Liquidia's reference-listed drug for Yutrepia.

[3] Liquidia points to the court's memorandum opinion and order denying UTC's motion for preliminary injunction to argue that the court has already concluded that UTC could have brought its claims of infringement of the '782 patent pursuant to the Declaratory Judgment Act in the second Hatch-Waxman suit. (Doc. 58 at 6.) However, Liquidia's argument overstates the court's findings. The court found that UTC likely delayed in asserting its claims of infringement of the '782 patent pursuant to the Declaratory Judgment Act, which weighed against a finding of irreparable harm. (Doc. 54 at 29, 30.) That UTC could have asserted its claims of infringement of the '782 patent at some point prior to the present case, based on a showing of imminent harm, does not necessarily mean that UTC should have asserted the '782 patent alongside its Hatch-Waxman claims.

not attempt to reconcile this contention with the Hatch-Waxman Act's purpose "to create an _artificial_ act of infringement for purposes of establishing jurisdiction in the federal courts." _Glaxo Grp._, 376 F.3d at 1351. Nor does it acknowledge that "[t]he Federal Circuit has not addressed the question of whether district courts may exercise jurisdiction over a claim asserting future infringement of a non-Orange Book patent under the Declaratory Judgment Act when such a claim is based solely on the filing of an []NDA by a . . . manufacturer." _Takeda Pharm. Co. v. Mylan Inc._, 62 F. Supp. 3d 1115, 1122 (N.D. Cal. 2014). To be sure, Liquidia's contention of an imminent threat of future infringement is undermined by the Hatch-Waxman Act's provision of a thirty-month stay of FDA approval upon a suit by the patent owner. _See_ § 355(c)(3)(C). Given this uncertainty, the court declines to conclude at this stage that the same transaction requirement has been satisfied in this case, and the issues raised are not similar enough to implicate the first-filed rule.[4]

Even considering the interests of judicial economy and the chronology of the filings, the present case is at a significantly

---

[4] In addition to the jurisdictional hurdle UTC may have faced had UTC asserted a claim of infringement of the '782 patent in the second Hatch-Waxman suit, the '782 patent's claims are not "essentially the same" as the claims of the '793 patent. _See infra_ Section II.C; _see also_ _Abbott Lab'ys v. Johnson & Johnson, Inc._, 524 F. Supp. 2d 553, 558 (D. Del. 2007) ("[I]t would not be appropriate to apply the first-filed rule to the [two actions at issue] because those cases involve different patents."), _aff'd_, 297 F. App'x 966 (Fed. Cir. 2008).

13

different procedural stage than the pending second Hatch-Waxman suit. In the second Hatch-Waxman suit, the Delaware district court has held a bench trial months ago, and the parties merely await the court's final judgment. Here, by contrast, Liquidia has yet to even file its answer. Thus, because of these distinctions, the court finds, in its discretion, that neither the rule against claim-splitting nor the first-filed rule serves as a bar to UTC's current claims of infringement of the '782 patent.

## C. Claim Preclusion

Liquidia next contends that "UTC seeks to relitigate matters ended by final judgment" in the first Hatch-Waxman suit. (Doc. 29 at 22.) Further, because the parties stipulated to the dismissal of the claim of infringement of the '793 patent in the second Hatch-Waxman suit, Liquidia argues that UTC cannot now bring an infringement claim for a "virtually identical" patent involving the same parties and accused product. (Id. at 22-23.) UTC responds that the '782 and '793 patents are materially different and that it could not have asserted the '782 patent in the prior Hatch-Waxman suits, thereby foreclosing the application of claim preclusion.[5] (Doc. 56 at 24.)

Claim preclusion requires the satisfaction of three

_____

[5] UTC clearly could not have asserted the '782 patent in the first Hatch-Waxman suit, as UTC obtained the '782 patent after the conclusion of the suit's bench trial. (Doc. 29 at 9, 12.)

conditions: (1) a prior final judgment on the merits, rendered by a court of competent jurisdiction; (2) identical parties or parties in privity; and (3) "the claims in the second matter are based upon the same cause of action involved in the earlier proceeding." In re Varat Enters., Inc., 81 F.3d 1310, 1315 (4th Cir. 1996). "[W]hether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases," and so the Federal Circuit applies its "own law to that issue." SimpleAir, Inc. v. Google LLC, 884 F.3d 1160, 1165 (Fed. Cir. 2018) (alteration in original) (quoting Senju Pharm. Co. v. Apotex Inc., 746 F.3d 1344, 1348 (Fed. Cir. 2014)).

Generally, "each patent establishes an independent and distinct property right," which therefore "raises an independent and distinct cause of action." Kearns v. Gen. Motors Corp., 94 F.3d 1553, 1555 (Fed. Cir. 1996). However, claim preclusion may still bar a second case involving a different patent if a comparison of the claims between the asserted patents demonstrates that the claims are "essentially the same." See SimpleAir, 884 F.3d at 1167. In the patent context, "the claim preclusion analysis requires comparing the patents' claims along with the other relevant transactional facts." Id. at 1168.

To begin, the court has already found that the present suit does not arise out of the same transaction or series of

15

transactions as either Hatch-Waxman suit.  Moreover, Liquidia has

not demonstrated enough overlap between the '782 patent and the

'793 patent for the court to conclude at this stage that the two

patents are "essentially the same."  On the one hand, claim one of

the '782 patent claims the "administration of an additional single

event dose in the same manner occur[ring] at least 3 hours later."[6]

(Doc. 1-1 at 27; <u>see</u> Doc. 29-1.)  But on the other hand, the claims

of the '793 patent make no mention of an additional dose event or

a dosing schedule.  (<u>See</u> Doc. 29-3 at 26.)  In fact, in trial

testimony provided by Liquidia regarding the '793 patent, UTC's

expert in the first Hatch-Waxman suit stated, "[T]here's nothing

there about frequency of dosing." (Doc. 79-1 at 3.)  Thus, claim

preclusion does not support the dismissal of UTC's present claims

of infringement of the '782 patent at this stage.

### D.  Issue Preclusion

Liquidia argues that issue preclusion also bars this patent

infringement action because the '793 patent and the '782 patent

contain substantially similar claims that do not differ in

patentably significant ways.  (Doc. 29 at 25.)  Moreover, Liquidia

---

[6] Liquidia has provided expert trial testimony from the first Hatch-Waxman suit to argue that a person of ordinary skill in the art would understand that the '793 patent permitted multiple daily doses because of the drug's half-life.  (<u>See</u> Doc. 79-1 at 3, 8.)  However, whether there is a material difference between a drug whose half-life permits multiple daily doses and a patent that expressly claims an additional dose separated by at least a three-hour interval seems to pose a question of fact.

contends that the alleged infringing activity here does not differ from the alleged infringing activity in the Hatch-Waxman suits. (Id. at 26.) UTC counters that Liquidia has not met its burden in demonstrating that the two patents present identical issues. (Doc. 56 at 26.)

Issue preclusion, also known as collateral estoppel, "forecloses the 'relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate.'" Allergan, 2015 WL 13358250, at *2 (alteration in original) (quoting Va. Hosp. Ass'n v. Baliles, 830 F.2d 1308, 1311 (4th Cir. 1987)). For the doctrine to apply, the movant must establish that:

> (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue [was] actually determined in the prior proceeding; (3) determination of the issue [was] a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment [is] final and valid; and (5) the party against whom the estoppel is asserted . . . had a full and fair opportunity to litigate the issue in the previous forum.

Id. (alterations in original) (quoting Sedlack v. Braswell Servs. Grp., Inc., 134 F.3d 219, 224 (4th Cir. 1998)).

In the patent infringement context, the application of collateral estoppel is not limited to "patent claims that are identical." Ohio Willow Wood Co. v. Alps S., LLC, 735 F.3d 1333,

17

1342 (Fed. Cir. 2013). "If the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies." Id. Thus, courts must "examine whether the asserted claims are 'substantially similar' to the invalidated claims." Allergan, 2015 WL 13358250, at *2 (quoting Ohio Willow Wood, 735 F.3d at 1342). Here, Liquidia correctly asserts that the only question is whether the claims of the '782 patent are substantially similar to the claims of the '793 patent. (See Doc. 29 at 24.)

Yet, as already noted, the claims of the '782 patent differ materially from those of the invalidated '793 patent. Specifically, the '782 patent contemplates an additional dose, administered at least three hours after the first dose. (Doc. 1-1 at 27; see Doc. 29-1.) However, the '793 patent's claims make no mention of an additional dose event. (Doc. 29-3 at 26.) Thus, unlike the patent claims compared in Allergan, the claims of the '782 and '793 patents cannot be said to employ "slightly different language to describe substantially the same invention." See Allergan, 681 F. App'x at 961 (holding that issue preclusion barred the patent claims in part because "[b]oth the current litigation and prior litigation concern[ed] eyelash darkness as well as broader qualities associated with hair growth"). Issue preclusion therefore does not provide a basis for the dismissal of the present case.

### E. **Kessler** Doctrine

Finally, Liquidia argues that the Federal Circuit's <u>Kessler</u> doctrine bars UTC's claims of infringement of the '782 patent because UTC now alleges that Yutrepia infringes the '782 patent in substantially the same manner as in the Hatch-Waxman suits. (Doc. 29 at 26 (citing <u>Kessler v. Eldred</u>, 206 U.S. 285 (1907)).) Specifically, according to Liquidia, UTC cannot repeatedly accuse Yutrepia of violating UTC's patent claims in identical ways after an adjudication of non-liability for infringement, even when the adjudication occurred through voluntary dismissal. (<u>Id.</u> at 27.) UTC counters that the <u>Kessler</u> doctrine, like claim and issue preclusion, only applies to different patents when the patents' claims are not materially distinct. (Doc. 56 at 28.)

The <u>Kessler</u> doctrine precludes "assertions of a patent against even post-judgment activity if the earlier judgment held that 'essentially the same' accused activity did not infringe that patent." <u>SimpleAir</u>, 884 F.3d at 1170. Under <u>Kessler</u>, "a party who obtains a final adjudication in its favor obtains 'the right to have that which it lawfully produces freely bought and sold without restraint or interference.'" <u>SpeedTrack, Inc. v. Off. Depot, Inc.</u>, 791 F.3d 1317, 1323 (Fed. Cir. 2015) (quoting <u>Rubber Tire Wheel Co. v. Goodyear Tire & Rubber Co.</u>, 232 U.S. 413, 418 (1914)). However, the <u>Kessler</u> doctrine bars the assertion of claims that claim preclusion cannot reach "because of their

19

timing." <u>SimpleAir</u>, 884 F.3d at 1170.  It does not "bar a broader set of rights than would be barred by claim preclusion."  <u>Id.</u> (emphasis omitted).

Liquidia rightly contends that UTC cannot serially accuse Yutrepia of infringement of UTC's patents in identical ways.  (<u>See</u> Doc. 29 at 27.)  But again, Liquidia has not demonstrated that the '793 patent and the '782 patent are so indistinguishable as to implicate the <u>Kessler</u> doctrine's bar against serial litigation, even though the parties and accused product remain the same.

As UTC correctly asserts, the difference between the <u>Kessler</u> doctrine and traditional preclusion doctrines is simply temporal – that is, the <u>Kessler</u> doctrine may bar a subsequent claim even when the newly alleged act of infringement occurred <u>after</u> the previously adjudicated case.  (Doc. 56 at 28.)  The <u>Kessler</u> doctrine does not otherwise expand traditional preclusion doctrines.  And here, neither claim nor issue preclusion bars the present action because of the differences in the patent claims, not because of the timing of the infringing act.  Liquidia's argument for the application of the <u>Kessler</u> doctrine therefore similarly fails at this stage.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant Liquidia's motion to dismiss or, in the alternative, stay or transfer (Doc. 28) is

20

DENIED.

                                     /s/   Thomas D. Schroeder
                                   United States District Judge

December 23, 2025