**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION NO. 1:25-CV-00368-TDS-JLW**

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>LIQUIDIA TECHNOLOGIES, INC.,<br><br>*Defendant*. | **JURY TRIAL DEMANDED** |

**PLAINTIFF UNITED THERAPEUTICS CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO CONSOLIDATE AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

BACKGROUND FACTS ........ 2

QUESTION PRESENTED ........ 4

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. This Case Should Be Consolidated with the ’494 Case ........ 5

A. The Cases Present Common Issues of Fact and Law ........ 5

B. The *Cree* Factors Support Consolidation ........ 7

II. This Case Should be Stayed Pending the Stay in the ’494 Case ........ 13

CONCLUSION ........ 13

CERTIFICATE OF WORD COUNT ........ 15

CERTIFICATE OF SERVICE ........ 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Moldex–Metric, Inc.*,
No. 06–4044, 2006 WL 3759758 (D.Minn. Dec. 21, 2006) ........ 12

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
No. 06-514 GMS, 2007 WL 2892707 (D. Del. Sept. 30, 2007) ........ 7

*Arnold v. E. Air Lines, Inc.*,
681 F.2d 186 (4th Cir. 1982) ........ 4

*Atl. Coast Pipeline, LLC v. 11.57 Acres, More or Less, in Nash Cnty., N. Carolina*,
No. 5:18-CV-13-BO, 2018 WL 5988343 (E.D.N.C. Nov. 14, 2018) ........ 5

*In re Cree, Inc.*,
219 F.R.D. 369 (M.D.N.C. 2003) ........ 4, 5, 8, 13

*Federal Trade Commission et al. v. Syngenta Crop Protection AG et al.*,
No. 22-cv-00828, D.E. 222 (M.D.N.C, July 5, 2024) ........ 13

*Ho Keung Tse v. Apple, Inc.*,
No. C 12-02653 SBA, 2013 WL 451639 (N.D. Cal. Feb. 5, 2013) ........ 14

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ........ 4

*NuPro Techs., Inc. v. E. I. Du Pont de Nemours & Co.*,
No. 1:06CV1061, 2008 WL 11355091 (M.D.N.C. July 15, 2008) ........ 13

*Pactiv Corp. v. Multisorb Techs., Inc.*,
No. 10 C 461, 2011 WL 686813 (N.D. Ill. Feb. 15, 2011) ........ 7, 12

*U.S. v. Georgia Pac. Corp.*,
562 F.2d 294 (4th Cir. 1977) ........ 4

*Williford v. Armstrong World Indus., Inc.*,
715 F.2d 124 (4th Cir. 1983) ........ 5

**Statutes**

21 U.S.C. § 355(b)(2) ........ 3, 6

**Other Authorities**

Fed. R. Civ. P. 42 .................................................................................................. 2, 4, 5

Fed. R. Civ. P. 42(a) .................................................................................................. 2, 4

Plaintiff United Therapeutics Corporation ("UTC") respectfully requests that the Court consolidate and stay this case with Liquidia Technologies Inc.'s ("Liquidia") earlier-filed '494 action[1] under Rule 42 because consolidation will serve judicial economy and be convenient and efficient for the parties.

Here, UTC asserts that Liquidia's Yutrepia™ treprostinil product infringes UTC's '782 patent. And in the other action, Liquidia asserts its '494 patent against UTC's Tyvaso DPI® treprostinil product. These cases involve similar subject matter: dry powder formulations, dry powder inhalers, and the same bioequivalent active ingredient–treprostinil—for the treatment of the same pulmonary hypertension patients.

Extensive factual and legal overlap between the cases is inescapable. For example, discovery in both cases will encompass the parties' treprostinil products and facts concerning the technical research and development of treatment for PH patients with dry powder inhalable treprostinil. Both cases will also address common issues of patent law, including infringement and invalidity doctrines such as anticipation, obviousness, written description, and enablement. For example, if UTC's earlier '782 patent were found invalid under these doctrines, that would directly undercut the validity of Liquidia's later '494 patent. Similarly, the cases will inevitably involve common prior art references, as any prior art that Liquidia asserts against UTC's patent will almost certainly be prior art to Liquidia's later-filed '494 patent. Indeed, UTC anticipates an invalidity defense against

---

[1] *Liquidia Techs. Inc. v. United Therapeutics Corp.*, No. 1:25-CV-00299 (filed Apr. 21, 2025) ("'494 case").

the ’494 patent based on the ’782 patent itself. Additionally, both cases will also likely involve expert testimony regarding the common prior art references, as well as the relevant disease states and the use of the accused products. There is no need for this Court to address the same issues twice. The two cases present “common question[s]” of law *and* fact justifying consolidation under Fed. R. Civ. P. 42(a).

Consolidation and a corresponding stay will serve judicial economy, fairness, and orderly adjudication. Proceeding separately would require duplicative discovery, involve multiple claim-construction proceedings involving overlapping terminology and technology, and risk inconsistent rulings rendered in the absence of the full context. Rule 42 exists to prevent precisely that result. These similar cases need not burden judicial resources twice over. And there is no prejudice to consolidate discovery, claim construction, pre-trial motions, and trial because UTC expects that the parties will (and should) take consistent positions in each action, thus further reducing avoidable confusion and opportunities for gamesmanship. The Court should therefore consolidate this action with the co-pending case brought by Liquidia and stay this action so that the matters proceed together.

## BACKGROUND FACTS

UTC markets Tyvaso® (treprostinil) inhalation solution, which was approved by FDA in 2009, and Tyvaso DPI® (treprostinil) inhalation powder, which was approved by FDA in 2022, for use in patients with pulmonary arterial hypertension (“PAH”) and pulmonary hypertension associated with interstitial lung disease (“PH-ILD”). Tyvaso DPI

is the first marketed dry powder formulation of treprostinil in the United States. Liquidia's Yutrepia, a follow-on dry powder formulation of treprostinil, was approved in 2025 for use with PAH and PH-ILD patients. Yutrepia's approval followed a section 505(b)(2) new drug application ("NDA")[2] and its proposed label described doses "equivalent" to UTC's Tyvaso. '494 case, D.E. 26 at 1-3. (D.E. 1, Ex. B (Yutrepia label) at 11, 13.)

On April 21, 2025, Liquidia asserted United States Patent No. 10,898,494 ("the '494 patent") against UTC in this Court. *See generally* '494 case, D.E. 1 (Liquidia's complaint); *id.*, Ex. A (the '494 patent). In its complaint, Liquidia alleged that UTC's development, manufacturing, commercial marketing, sales, and use of Tyvaso DPI infringes the '494 patent. *See* '494 case, D.E. 1 at ¶ 1.

On May 9, 2025, UTC asserted United States Patent No. 11,357,782 ("the '782 patent") against Liquidia ("the '782 case"). (*See generally* D.E. 1 (UTC's Complaint); *id.*, Ex. A (the '782 patent).) UTC asserts infringement of the '782 patent by Liquidia's unauthorized development, manufacturing, commercial marketing, distribution, offers for sale, sales and use of Yutrepia. (*Id.* at ¶ 1.)

On November 17, 2025, after a hearing, this Court granted a six-month stay in the '494 case pending the resolution of two North Carolina Business Court cases between UTC and Liquidia implicating ownership of—and standing to assert—the '494 patent.

[2] A section 505(b)(2) NDA is permitted under 21 U.S.C. § 355(b)(2) and permits an applicant to shortcut the usual approval process by relying on the safety and efficacy data submitted by another applicant for another drug. Section 505 of the Food, Drug, and Cosmetic Act became U.S. Code section 355.

## QUESTION PRESENTED

Whether the Court should consolidate this case with the ’494 case, and enter a stay, where the actions involve the same parties and concern common questions of fact and law.

## LEGAL STANDARD

Fed. R. Civ. P. 42(a) empowers the Court to consolidate “any or all the matters in issue” in actions having “a common question of law or fact.” In exercising discretion to consolidate proceedings, courts consider the *Cree* factors, *i.e.*, “the risk of prejudice and possible confusion versus the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit.” *In re Cree, Inc.*, 219 F.R.D. 369, 371 (M.D.N.C. 2003) (citing *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982)).

A district court also has broad discretion to stay proceedings as part of its inherent power to control its own docket. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay, the district judge must weigh “competing interests,” *id.* at 255, and “balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court’s docket.” *U.S. v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). These factors include: “(1) the interest of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.” *Atl. Coast Pipeline, LLC v. 11.57 Acres, More or Less,*

*in Nash Cnty., N. Carolina*, No. 5:18-CV-13-BO, 2018 WL 5988343, at *1 (E.D.N.C. Nov. 14, 2018). Finally, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## ARGUMENT

### I. This Case Should Be Consolidated with the '494 Case

This case should be consolidated with the '494 case because the two cases present overlapping questions of law and fact and allowing them to proceed separately would create precisely the inefficiency, duplication, and risk of inconsistent rulings that Rule 42 is designed to prevent. *See* Fed. R. Civ. P. 42. Every *Cree* factor favors consolidation. *See In re Cree, Inc.*, 219 F.R.D. at 371.

#### A. The Cases Present Common Issues of Fact and Law

There is extensive factual and legal overlap between the cases. Factually, the underlying technology at issue in both cases is dry powder formulations of treprostinil and their use with pulmonary hypertension patients. Both the '782 patent and the '494 patent disclose "method[s] of treatment" using "dry powder" formulations of "treprostinil" and share a common inventor, Dr. Robert Roscigno, who was formerly an executive at both UTC and Liquidia. *See* '782 patent, Claim 1; '494 patent, Claim 1. The similarities do not end there.

Both accused products (Tyvaso DPI and Yutrepia) comprise a dry powder formulation of treprostinil and use a dry powder inhaler ("DPI") to administer it. The

accused products are also currently approved for the same indications: PAH and PH-ILD. Thus, infringement discovery will implicate the same types of patients and physicians, and expert discovery is likely to be substantially overlapping. Damages discovery will concern the same market.

The clinical trials leading to approval of the accused products, Tyvaso DPI and Yutrepia, also overlap because Liquidia used the 505(b)(2) regulatory pathway to seek FDA approval. The 505(b)(2) pathway allows an applicant to rely upon existing studies conducted by the sponsor of an already approved drug to establish safety and efficacy. *See* 21 U.S.C. § 355(b)(2). In its 505(b)(2) application for Yutrepia, Liquidia relied on existing studies performed by UTC and identified nebulized Tyvaso as the earlier-studied drug that formed the foundation of Yutrepia's ultimate approval. (D.E. 1, Ex. C at 2; D.E. 1, Ex. D at 2.) Thus, this same and significant body of clinical trial evidence is implicated in both cases.

With so much factual overlap, there will also be significant overlap in discovery. As mentioned above, Dr. Robert Roscigno is an inventor on both patents and could be deposed in both cases. Previous cases between UTC and Liquidia have also involved depositions of various technical, financial, and regulatory witnesses of both sides. Here, that could lead duplicative depositions. Both cases will likely involve requests for and discovery into the Tyvaso, Tyvaso DPI, and Yutrepia NDAs. Likewise, expert testimony is likely to include issues common to both actions, including definitions for the person of ordinary skill in the art for each patent and damages analysis addressing the same market(s). *See infra* at 12.

The two cases also include common questions of law. The alleged prior art relevant to both patents substantially overlaps, and legal issues of invalidity—including anticipation, obviousness, written description, and enablement—will involve shared scientific background. In fact, because the ’782 patent claims priority to May 2006 and the ’494 patent claims priority to May 2016, the ’782 patent itself is prior art to the ’494 patent. In addition, any references that Liquidia contends disclose or render obvious dry powder formulations of treprostinil and related methods claimed in the ’782 patent would also apply in assessing the validity of the ’494 patent that was filed a decade later.

The two cases thus involve substantial factual and legal overlap. Even where there are fewer overlapping factual and legal issues than here, courts have found it in the interest of judicial economy to consolidate cases where much of the technology and language is interrelated. *See Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2011 WL 686813, at *3 (N.D. Ill. Feb. 15, 2011) (granting consolidation where the patents covered interrelated technologies); *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, No. 06-514 GMS, 2007 WL 2892707, at *4 (D. Del. Sept. 30, 2007) (granting consolidation where the subject matter of the patents at issue was “very similar”).

### B. The *Cree* Factors Support Consolidation

Absent consolidation of the ’782 and ’494 cases, the parties risk the concerns articulated by the court in *Cree*: “the risk of prejudice and possible confusion[,] the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time

required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit." *In re Cree*, 219 F.R.D. at 371.

Here, consolidation presents no risk of prejudice or confusion. One jury can just as readily address infringement and invalidity for the parties' two patents as two juries could for one patent each. The law is the same for each patent, and there is no apparent unfairness to Liquidia in trying the two patents in one trial conducted in the forum that Liquidia selected when it filed suit. And Liquidia has articulated no basis for contending that a consolidated trial would cause prejudice. Nor has Liquidia identified any basis for contending that pre-trial consolidation (through document production, written discovery, claim construction, expert discovery, and pre-trial practice) would be prejudicial or confusing to anyone. In fact, a single trial would reduce confusion and eradicate potential gamesmanship and inconsistent outcomes. It would also reduce the burden on the Court and the public in minimizing the amount of duplicative briefing, motions, and hearings on issues that will likely arise in both cases.

Liquidia's lone claim for prejudice, previewed by counsel at the recent motion to dismiss hearing, is that allegedly this case presents an "overhang on Liquidia to keep that cloud over the Yutrepia product." **Exhibit A** (Hearing Tr.) at 41:1-4. This argument is without foundation for several reasons.

First, Liquidia itself sought to stay this action. (D.E. 28 (entitled "Motion To Dismiss Or, In the Alternative, Stay or Transfer").) At the recent hearing, Liquidia first denied that it sought a stay and then withdrew its request for stay when confronted with its

motion caption, which expressly requests a stay. **Exhibit A** (Hearing Tr.) at 31:10-20 (denying that Liquidia sought a stay); 32:2-3 (addressing title of Liquidia's Motion); 32:7-10 (disavowing a stay). (*See also* D.E. 80 at 7 ("Liquidia orally withdrew its request to stay the action.").) Liquidia's alleged justification, that Yutrepia is now on the market (**Exhibit A** (Hearing Tr.) at 32:13-19), does not hold water. Liquidia was preparing to launch when it filed the motion seeking a stay on May 15, 2025, and Liquidia launched—something that cannot be accomplished without preparation—in June 2025. There is no material difference between (i) preparing to imminently launch and (ii) having already launched that justifies the change of position. Liquidia's changed position appears driven by tactics, not efficiency for the parties or the Court.

Second, the claimed "overhang" is belied by Liquidia's launch and public claims that Yutrepia's sales have exceeded expectations. *See, e.g.*, **Exhibit B** (Liquidia Net Sales and Corporate Update) at 1. In Liquidia's words, its launch has been "successful," with "continued momentum in adoption" and "growing physician confidence in [Yutrepia]." *Id.*; *see also id.* (touting sales of $90.1 million in the fourth quarter of 2025 and 74% quarter-over-quarter growth). Liquidia's warning of a "cloud" is contradicted by its own public statements.

Finally, even after purporting to withdraw its stay request and expressing a desire for this action to move quickly, Liquidia requested and obtained an extension of time to answer UTC's Complaint, even though it was filed eight months ago. (D.E. 81 (consent motion for extension); D.E. 1 (establishing the Complaint was filed May 9, 2025).)

Liquidia cannot delay the case for its benefit and then claim prejudice from UTC's request for consolidation. Nor is there a basis for contending that the jury would be confused. If anything, the jury would be less confused if the cases were consolidated. Absent consolidation, the jury in each case will hear testimony about what the other party has or will argue in the other case. It would be far less confusing if the same jury heard both the evidence and arguments directly.

On the other hand, not consolidating cases presents the risk of inconsistent adjudication, increases the burdens on the Court, juries, parties, and witnesses.

First, there would be risk of inconsistent adjudication on claim construction and on the merits at trial. Although the patents have different specifications (written descriptions) and priority dates, the '782 patent and the '494 patent both address treatments for pulmonary hypertension and involve overlapping terms and concepts. At claim construction, consolidation would promote efficiency in briefing, argument, and consistency if appropriate given the patents' intrinsic evidence. Consolidation would guard against the possibility of contrary positions across the patents and help ensure consistent analysis during claim construction. The Court has already recognized efficiency from treating these cases together, having held a consolidated hearing on November 17, 2025 on motions to dismiss in both cases. Both the parties and the Court benefitted from considering the two cases together, with counsel for both sides prepared to address the Court's questions regarding all the parties' issues pending before this Court. Consolidation was

noted by UTC as a possible efficiency at the outset of this matter. (D.E. 1 at ¶ 9 n.1; D.E. 56 at 1.)

If consolidated through trial, consolidation would also mitigate the risk of inconsistent outcomes on the validity of each asserted patent. Liquidia could not seek a broad interpretation of alleged prior art to UTC's '782 patent while arguing for a narrow interpretation of that same art against the '494 patent. As mentioned above, not only is the '782 patent prior art to the '494 patent, but any prior art that Liquidia will cite against the '782 patent would also be prior art to the '494 patent. There is no reason for the parties, their experts, and the Court to evaluate these issues in isolation. Conducting entirely separate proceedings would risk having the same prior art references interpreted differently. Moreover, even if the two patents are not ultimately tried together, consolidating the cases for all pre-trial purposes will help ensure that the parties and their fact and expert witnesses take consistent positions on the issues.

Second, consolidation would minimize the burden on the Court, parties, and witnesses. As mentioned above, Liquidia relied on UTC's clinical trials and resulting data in its 505(b)(2) application to FDA and document discovery will involve common prior art, product development and R&D documents, and NDA submissions. For discovery purposes, it conserves resources to produce those just once, not twice. It also makes more sense to depose each side's regulatory, financial, and technical witnesses once, not in separate depositions. Because of the identical parties in both suits, as well as the shared scientific background of the accused products, many individuals relevant to the '782 case

may also be deposed in the '494 case, including Dr. Roscigno. Likewise, many of the same regulatory individuals relevant to the submission of FDA applications will likely overlap between the cases. Many of the same scientific experts may be necessary to parse the technology that overlaps within the patents. In addition, there will likely be overlap in written discovery.

Further, because Tyvaso DPI and Yutrepia use the same active ingredient to treat an overlapping population of patients with PAH and PH-ILD, the accused products are competitors in the same market. Any damages analysis will involve similar discovery and testimony, including market analysis, projections, and calculations. Any calculation of reasonable royalties or lost profits will involve analysis of the same numbers and documents relating to the market. Courts have found it appropriate to consolidate cases where two cases shared common damages analysis and discovery. *See Pactiv Corp.*, 2011 WL 686813, at *3 (finding similar discovery and damages analysis justified consolidation); *3M Co. v. Moldex–Metric, Inc.*, No. 06-4044, 2006 WL 3759758, at *2 (D. Minn. Dec. 21, 2006) (finding common damages analysis of competing products justified consolidation).

Absent consolidation (or at least coordination[3]) this overlap will be inefficient—consuming more time and cost from the parties and exacting a heavier burden on the Court. Consolidation would promote judicial economy by conserving the Court's resources,

---

[3] At minimum, in the absence of full consolidation, this Court found it appropriate to order coordination of written discovery in several related cases in *Federal Trade Commission et al. v. Syngenta Crop Protection AG et al.*, No. 22-cv-00828, D.E. 222 (M.D.N.C. July 5, 2024).

which outweighs any risk of confusion of the issues and any prejudice that Liquidia might allege. *See NuPro Techs., Inc. v. E. I. Du Pont de Nemours & Co.*, No. 1:06CV1061, 2008 WL 11355091, at *1 (M.D.N.C. July 15, 2008) (finding consolidation proper when judicial economies outweigh any "delay of the trial, risk of confusion of the issues, or tension between law applicable to the claims"). These same issues of duplication and wasted time will also result in wasted expense by the parties. *See In re Cree*, 219 F.R.D. at 370.

## II. This Case Should be Stayed Pending the Stay in the '494 Case

Should the Court grant the above request for consolidation, the consolidated matters should be stayed so that they proceed together.

All of the reasons that support consolidation—common issues of law and fact, conservation of judicial resources, and reduced burden on the parties and witnesses—also favor staying the '782 case to the same extent as the '494 case. Judicial economy favors consolidation and a stay, as described above. Both parties would likely be prejudiced by the burden of duplicative work should the '782 case proceed while the '494 case is stayed. Conversely, neither party would be substantially prejudiced by a stay. Thus, a stay is appropriate. *See Ho Keung Tse v. Apple, Inc.*, No. C 12-02653 SBA, 2013 WL 451639 (N.D. Cal. Feb. 5, 2013) (finding that consolidation with a stayed case resulted in a stay).

## CONCLUSION

For the reasons explained above, UTC requests that the Court consolidate the '782 and '494 cases through trial and stay proceedings in the '782 case pending resolution of the stay in the '494 case.

This the 23rd day of January, 2026.

SMITH, ANDERSON,
BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

/s/ *Christopher G. Smith*
Christopher G. Smith
N.C. State Bar No. 22767
David A. Pasley
N.C. State Bar No. 52332
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com
dpasley@smithlaw.com

William C. Jackson
D.C. Bar. No. 475200
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20001
Telephone: (202) 346-4000
Email: WJackson@goodwinlaw.com

Douglas H. Carsten
CA. Bar No. 198467 McDermott Will & Emery LLP
12636 High Bluff Drive, Suite 325
San Diego, CA 92130
Telephone: (619) 467-1802
Email: Dcarsten@mwe.com

*Attorneys for United Therapeutics Corporation*

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this brief is in compliance with Rule 7.3(d)(1) of the Local Rules for the Middle District of North Carolina, in that it contains less than 6,250 words, excluding the portions of the brief covered by Local Rule 7.3(d).

Date: January 23, 2026

/s/ *Christopher G. Smith*
Christopher G. Smith
N.C. State Bar No. 22767
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com

*Attorneys for United Therapeutics Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed with the Court using the CM/ECF system, which electronically served all counsel of record.

Dated: January 23, 2026.

/s/ *Christopher G. Smith*
Christopher G. Smith
N.C. State Bar No. 22767
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com

*Attorneys for United Therapeutics Corporation*