IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:25-CV-00368-TDS-JGM

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, *Plaintiff*, v. LIQUIDIA TECHNOLOGIES, INC., *Defendant*. | **JURY TRIAL DEMANDED** |

**PLAINTIFF UNITED THERAPEUTICS CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO CONSOLIDATE AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

I. This Case and the '494 Action Substantially Overlap ................................. 2

    A. The Asserted Patents Both Claim Methods of Treating PH Patients with Inhaled Dry Powder Formulations of Treprostinil ................................................................................................ 2

    B. Both Accused Products Are Inhaled Dry Powder Formulations of Treprostinil Used to Treat PH Patients .............................. 4

    C. The *Cree* Factors Support Consolidation ........................................... 7

        1) Liquidia's Assertion of "Significant Confusion" Falls Flat ............................................................................................... 7

        2) No Prejudice or Harm as Yutrepia Sales Outpace Projections ................................................................................. 9

        3) Liquidia's Gamesmanship and Flip-Flopping Litigation Tactics Create Risk of Inconsistent Outcomes ........................................................................................... 10

        4) Consolidation Promotes Judicial Economy and Party Efficiency ................................................................................ 11

II. Consolidation Warrants Staying this Case Pending the '494 Action Stay ................................................................................................ 11

CONCLUSION ........................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnold v. Eastern Air Lines, Inc.*,
712 F.2d 899 (4th Cir. 1983) (en banc) ................................................................. 12

*Belk, Inc. v. Meyer Corp., U.S.*,
679 F.3d 146 (4th Cir. 2012) ..................................................................................... 8

*DivX, LLC v. Hulu, LLC*,
2021 WL 6499935 (C.D. Cal. Oct. 6, 2021) ............................................................ 12

*Finjan Software, Ltd. v. Secure Computing Corp.*,
2009 WL 2524495 (D. Del. Aug. 18, 2009) .............................................................. 5

*Greene v. 4520 Corp., Inc.*,
2023 WL 3513306 (E.D.N.C. May 17, 2023) ........................................................... 9

*Helm v. Slaughter*,
2024 WL 3928891 (M.D. Pa. Aug. 23, 2024) ........................................................... 9

*Ho Keung Tse v. Apple, Inc.*,
2013 WL 451639 (N.D. Cal. Feb. 5, 2013) ............................................................. 12

*Icon Health and Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ................................................................................. 9

*Koninklijke Philips N.V. v. Zoll Med. Corp.*,
656 F. App'x 504 (Fed. Cir. 2016) ........................................................................ 5, 8

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007) ................................................................................................... 8

*Lashify, Inc. v. Urban Dollz LLC*,
2024 WL 1136129 (C.D. Cal. Feb. 13, 2024) ........................................................... 6

*Renaissance Nutrition, Inc. v. Jarrett*,
2009 WL 1475902 (W.D.N.Y. May 27, 2009) .......................................................... 9

*Sellers v. Se. Cmty. & Fam. Servs., Inc.*,
2015 WL 1789042 (M.D.N.C. Apr. 20, 2015) ..................................................... 7, 10

*Sizemore v. Sw. Va. Reg'l Jail Auth.*,
   2009 WL 90108 (W.D. Va. Jan. 14, 2009) ................................................................... 9

*Wilmington Trust, Nat. Assn'n v. Nat. Gen. Ins. Co.*,
   2021 WL 2531063 (M.D.N.C. June 21, 2021) ........................................................... 11

**Other Authorities**

Fed. Circuit Bar Ass'n, *Model Patent Jury Instructions* 4.3c, May 2020 .......................... 8

Fed. R. Civ. P. 42 ................................................................................................................ 4

This case ("'782 Action") and Liquidia's 1:25-cv-00299 case involving the '494 patent ("'494 Action")—two closely related patent cases—should be consolidated and tried together. As UTC noted at the outset, the cases have significant "commonality [of] parties and products and overlapping subject matter regarding the inhaled dry powder administration of treprostinil to treat pulmonary hypertension." (D.E. 1 (Complaint) at 4.)

Liquidia cannot legitimately dispute the objective similarities between these Actions. Both cases assert patents claiming methods of treating patients with pulmonary hypertension ("PH") using an inhaled dry powder formulation of treprostinil, and the patents even share an inventor. The accused products compete in the same markets and were approved based on many of the same clinical trials. And each party's product is implicated in both cases: Tyvaso DPI® is covered by the '782 patent and accused of infringing the '494 patent, while Yutrepia™ is covered by the '494 patent and accused of infringing the '782 patent.

There is also a serious risk of inconsistent outcomes if the two patents are not tried together. Absent consolidation for trial, Liquidia will try to invalidate UTC's patent by telling one jury that treating PH patients with inhaled dry powder treprostinil using multiple doses was obvious in 2006. Then, to try to preserve its own patent, Liquidia will tell the '494 Action jury that treating PH patients with inhaled dry powder treprostinil was novel and inventive a decade later. A single jury will better understand the state of the art for both patents, which will promote clarity, not confusion. Preventing inconsistent

1

outcomes cannot "prejudice" Liquidia and does not warrant burdening the Court with conducting two trials when one will fairly and efficiently resolve both disputes.

## I. This Case and the '494 Action Substantially Overlap

The '494 and '782 Actions overlap significantly, including patent subject matter, parties, products, clinical trials, market, as well as fact and likely expert witnesses. (D.E. 84 (UTC's "Motion") at 5-7.) Liquidia mischaracterizes the asserted patents and appears to assume that every detail of each issue must be *identical*, but that is not the law. The extensive overlap of facts and law justifies consolidation.

### A. Both Asserted Patents Claim Methods of Treating PH Patients with Inhaled Dry Powder Formulations of Treprostinil

There is no merit to Liquidia's bold allegation that the patents "markedly differ" and that "***no*** overlap exists between the '782 and '494 independent claims." (D.E. 89 at 5, 9 (emphasis added).) There is undeniably extensive overlap. (Motion at 5-7.) Indeed, Liquidia listed the '494 patent in the Orange Book for Yutrepia, meaning that it believes Yutrepia practices the '494 patent. *See* Ex. 1 (Yutrepia OB Listing). Yutrepia also infringes the '782 patent. (D.E. 1, ¶¶ 37-55.) Similarly, Liquidia asserts that Tyvaso DPI infringes the '494 patent, and UTC listed the '782 patent in the Orange Book for Tyvaso DPI. The fact that each product is alleged to satisfy the claims of *both* patents confirms that "overlap exists between the '782 and '494 patent independent claims." (*Cf.* D.E. 89 at 5, 9.)

Liquidia's table meant to "summarize the key differences between the Actions" underscores the commonalities between the patents. (D.E. 89 at 3-5.) As Liquidia confirms, both Actions concern treatments for PH patients with inhaled dry powder formulations of

2

treprostinil and include "[c]laims with dosing limitations" differing only in the number of micrograms of treprostinil (15-90 versus 100-300 micrograms) and the number of breaths for delivery (1-3 versus 1-4 breaths). These alleged minimal differences should not control consolidation. The breath ranges plainly overlap. Regarding doses, Tyvaso DPI includes doses between 15-90 micrograms, and Liquidia asserts that it includes doses above 100 micrograms. Similarly, Yutrepia doses span both ranges, from 26-212 micrograms. (D.E. 1-2 (August 2024 Yutrepia label) at 20.)

The '494 patent's recitation—in one dependent claim—of different excipients (i.e., inactive ingredients that are included along with treprostinil) is irrelevant. (D.E. 89 at 9 (citing '494 patent claim 5).) But this claim is unlikely to be asserted against UTC because Tyvaso DPI plainly does not use the claimed excipients. (*See* D.E. 89-7 ("Tyvaso DPI label") at 7.) In any event, that one claim's inactive excipients might be different does not justify denying the motion—consolidation does not require identicality, just common issues, of which there are many.

Liquidia's current emphasis on minor dosing and administration differences is difficult to reconcile with the positions it took to support its motion to dismiss. There, Liquidia argued that the '793 patent was "substantially similar" to the '782 patent despite differences including (1) administering the single event dose in less than 5 minutes; (2) coordinated actuation of the dry powder inhaler with each breath; and (3) administration of an additional single event dose in the same manner at least 3 hours later. (D.E. 29 at 21.) Here, by contrast, Liquidia contends that minor differences in dosing and breath counts

3

require two separate trials. (D.E. 89 at 4-5.) Consolidation, however, requires far less similarity than claim preclusion or estoppel. Under the less stringent consolidation standard, the '782 and '494 patents clearly overlap enough to be decided together. (*See* D.E. 80 at 17-18 (denying motion).)

A rejection by the USPTO examiner during prosecution of the '494 patent confirms that overlap. Before the '494 patent issued, the USPTO examiner rejected the pending claims as obvious over an application related to the '782 patent. (*Cf.* D.E. 89 at 3; *see also* Ex. 2 ('494 Patent Final Rejection) at 3.) This rejection strongly *supports* that the patents involve "common issues of fact" supporting consolidation given that the '782 patent is prior art to the '494 patent. *See* Fed. R. Civ. P. 42. Moreover, absent consolidation it is likely that evidence, such as highly relevant expert opinions, from the '782 Action will be used in the '494 Action. Potential confusion would be greatly minimized if a single jury heard directly from all experts.

### B. Both Accused Products Are Inhaled Dry Powder Formulations of Treprostinil Used to Treat PH Patients

Like the asserted patents, the accused products are highly similar. The accused products comprise the same active ingredient (treprostinil) delivered by the same type of formulation (dry powder) in the same delivery mechanism (dry powder inhaler) indicated to treat the same patient populations (PAH and PH-ILD patients). *See* Ex. 5 (highlighted comparison of relevant sections of Tyvaso DPI Label with D.E. 89-5 (June 2025 Yutrepia Label)) at Section 1 ("Indications and Usage"). Liquidia's attempt to differentiate the accused products fails to show how any difference supports denying consolidation. Patent

4

infringement actions regularly involve multiple products that are not *identical*, and juries are able to understand differences in products. *See, e.g.*, *Koninklijke Philips N.V. v. Zoll Med.*, 656 F. App'x 504, 510 (Fed. Cir. 2016) (jury considered cross-claims of infringement regarding parties' different products); *Finjan Software V. Secure Computing Corp.*, 2009 WL 2524495 at *1-2 (D. Del. Aug. 18, 2009) (similar).

The similarities between Tyvaso DPI and Yutrepia are no coincidence. The two accused products are alike because Liquidia relied on UTC's Tyvaso clinical studies to obtain approval. Indeed, the products' FDA-approved labels' "Indications and Usage" read nearly verbatim. *See* Ex. 5 at Section 1. The duplicative information in the two labels continues throughout Sections 5 ("Warnings and Precautions"), 7 ("Drug Interactions"), 8 ("Use in Specific Populations"), 10 ("Overdosage"), 12 ("Clinical Pharmacology"), 13 ("Nonclinical Toxicology"), and 14 ("Clinical Studies"). *See Id.* In fact, Liquidia represented to FDA that Yutrepia is safe and effective *because it works like Tyvaso*. (*Cf.* D.E. 89 at 12.)

Liquidia's argument that no other drug is "therapeutically equivalent" to Yutrepia is misleading and irrelevant. (*See* D.E. 89 at 5-6.) The FDA's definition of "therapeutically equivalent" requires that products "contain **identical** amounts of the identical active drug ingredient in the **identical** dosage form." Ex. 3 (FDA, Approved Drug Products with Therapeutic Equivalence Evaluations, (2026)) at 5 (emphasis added). That identicality is not required for consolidation. And in any event, Liquidia's FDA-approved label bridges

5

any gap by explicitly identifying "equivalent" doses for Tyvaso and Yutrepia. (*See* D.E. 89-5 (June 2025 Yutrepia Label) at 3, 12.) The similarities favor consolidation.

Whether a party is labeled a "plaintiff" or "defendant" is also irrelevant. (*See* D.E. 89 at 9.) Patent cases routinely involve multiple plaintiffs, defendants, third parties, and counterclaimants. A jury is capable of understanding that there are two parties, two products, and two patents. Liquidia's failure to identify any concrete "confusion" is telling.

Further, UTC could obviate any alleged differences between the cases by asserting the '782 patent in counterclaims in the '494 Action. *See Lashify, Inc. v. Urban Dollz LLC*, 2024 WL 1136129, at *7-8 (C.D. Cal. Feb. 13, 2024) (tentative ruling), *adopted by* Dkt. No. 216 (C.D. Cal. Feb. 15, 2024). In *Lashify*, the defendant filed patent infringement counterclaims after earlier filing them in a standalone case. The court ultimately consolidated, reasoning that "considerations of efficiency favor consolidation in a single action, as opposed to maintaining two separate actions involving overlapping parties and similar subject matter." *Id.* at *7.

Liquidia's argument that the experts "may" differ or that the same witnesses may be asked "separate questions" does not justify keeping the cases apart. Liquidia apparently does not dispute that the experts will likely overlap and that the same fact witnesses will likely testify in both cases, including regarding each party's invention stories (shared inventor), development of treatment with common active ingredient (treprostinil), and financial and market implications. (*See* Motion at 11-12.) Liquidia's position would force not only this Court, but also an additional jury, to partake in separate, but highly similar,

6

trials concerning many of the same facts and issues of law. These similarities support consolidating the Actions through trial. *See Sellers v. Se. Cmty. & Fam. Servs.,* 2015 WL 1789042, at *3 (M.D.N.C. Apr. 20, 2015) (holding that "speculative prejudice does not outweigh any efficiency gained from consolidating the trials."), *adopted sub nom. U.S. v. Wesley*, 2015 WL 3767151 (M.D.N.C. June 16, 2015).

### C. The *Cree* Factors Support Consolidation

Liquidia's analysis of the *Cree* factors is misguided and no basis for denying consolidation. Liquidia failed at step one as it cannot articulate any plausible risk of confusion and will not be prejudiced by consolidation. Further, the risk of inconsistent judgment and the burden of time and expense on the Court, jury, and parties greatly outweigh any alleged confusion or prejudice.

#### 1) Liquidia's Assertion of "Significant Confusion" Falls Flat

Liquidia fails to identify any specific "confusion." Despite the number of issues to be tried (*see* D.E. 1; D.E. 85, and Ex. 4 ('494 Action Complaint)), Liquidia speculates about two problems: generic confusion about each party's evidence, and potential confusion of priority dates. Liquidia's conclusory arguments make little sense.

Regarding generic confusion about evidence, Liquidia's argument (D.E. 89 at 16) is weak, unsupported, and waived. Liquidia fails to explain why confusion of evidence would be any greater in a consolidated trial than separate trials. Because prior art to UTC's earlier '782 patent would also constitute prior art to Liquidia's '494 patent, the jury in a consolidated case or separate '494 patent trial will hear about the '782 patent either way.

7

Any attempt to shield the '494 Action jury from the '782 patent and the prior art's teachings would fail, and mere exposure to prior art is not "confusion." Liquidia fails to address these points and, other than asserting confusion, provides little further explication. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012), *as amended* (May 9, 2012) ("fail[ing] to develop [an] argument to any extent in its brief" is waiver). It has thus waived the ability to assert confusion as a basis to oppose consolidation.

If anything, any confusion in this case might actually redound to Liquidia's benefit. If the jury were confused about priority dates, it is UTC's patent that could feasibly be subject to invalidation by art published after its '782 patent and before Liquidia's '494 patent. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007) (factfinders must be aware "of the distortion caused by hindsight bias"). Yet, such risk of confusion is minimal and already addressed by standard jury instructions. Fed. Circuit Bar Ass'n, *Model Patent Jury Instructions* 4.3c, May 2020 ("Do not use hindsight; consider only what was known at the time of the invention [or the patent's filing date]."). That is no reason to deny consolidation.

Liquidia's other confusion argument is similarly weak. Without support, Liquidia asserts that juries lack the capacity to consider more than one patent, one product, or one party at a time without risk of confusion. (D.E. 89 at 16.) This position is belied by precedent where juries have evaluated multiple patents cross-asserted by both plaintiff and defendant alleging infringement by numerous products. *See, e.g.*, *Koninklijke Philips*, 656

8

F. App'x at 509-10 (jury finding multiple defendant products infringed multiple plaintiff patents and at least one plaintiff product infringed defendant's patent).

Liquidia's cases are readily distinguishable as they do not relate to patent litigation. *See, e.g.*, *Helm v. Slaughter*, 2024 WL 3928891 (M.D. Pa. Aug. 23, 2024) (civil rights plaintiffs with different qualifications); *Greene v. 4520 Corp., Inc.*, 2023 WL 3513306, at *1 (E.D.N.C. May 17, 2023) (personal injury plaintiffs with different claims and varying degrees of injury); *Renaissance Nutrition, Inc. v. Jarrett*, 2009 WL 1475902, at *2 (W.D.N.Y. May 27, 2009) (different agreements with different dates at different procedural stages); *Sizemore v. Sw. Va. Reg'l Jail Auth.*, 2009 WL 90108, at *2 (W.D. Va. Jan. 14, 2009) (multiple plaintiffs alleging distinct torts by multiple non-overlapping defendants). None of these cases control here.

Liquidia has failed to establish any concrete confusion, and any risk of confusion could be addressed once the scope of the case has narrowed before trial.

### 2) No Prejudice or Harm as Yutrepia Sales Outpace Projections

Liquidia's alleged prejudice from a "cloud of perpetual patent infringement" is both unsupported and incorrect. Liquidia provides no testimonial or documentary evidence of harm or prejudice from the pending infringement action. (*See* Motion at 9.) Indeed, Liquidia admits it has no factual support because the facts are supposedly "unknowable." (D.E. 89 at 17-19.) Liquidia's reliance on attorney argument as its only support—rather than a factual declaration or other evidence—is fatal. (*Id.* at 18.) *See Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) (stating "[a]ttorney

9

argument is not evidence."). No "cloud of perpetual patent infringement" exists, either—in fact, Liquidia's sales have exceeded expectations. (Motion at 9.)

Lastly, as detailed below, UTC's request to consolidate and stay the '782 Action with the '494 Action promotes efficient adjudication, outweighing any speculative prejudice to Liquidia. *See infra* §§ I(C)(4), II. *Sellers*, 2015 WL 1789042, at *3 ("speculative prejudice does not outweigh any efficiency gained from consolidating the trials.").

### 3) Liquidia's Gamesmanship and Flip-Flopping Litigation Tactics Create Risk of Inconsistent Outcomes

Liquidia's gamesmanship underscores why consolidation is necessary. Despite this case having just commenced, Liquidia has already taken inconsistent positions. *See supra* § I(A) at 3-4. Further, Liquidia argues that potential "confusion" of each party's evidence requires separate trials, but this is a fruitless attempt to shield its later '494 patent from "what a [POSA] would have known." (D.E. 89 at 16.) *See In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995) (a POSA "is presumed to know the relevant prior art."). Liquidia's conflicting positions seed inconsistency.

Despite Liquidia's musings about what UTC may "suggest[]," UTC has never stated that the Court must construe claim terms in the two patents the same. (*See* Motion at 10.) Rather, UTC contends that consolidation will guard against the possibility of contrary positions and ensure consistent analysis. Liquidia conveniently ignores UTC's concerns regarding inconsistent validity positions, as laid out above. *See supra* at 1. The possibility

of inconsistent outcomes far outweighs Liquidia's speculative and undeveloped claims of confusion or prejudice.

### 4) Consolidation Promotes Judicial Economy and Party Efficiency

Consolidation of the two Actions will preserve judicial economy and be far more efficient for the parties. It is plainly more efficient for all involved—including the Court and jury—to hold only one trial. (Motion at 11-12.)

Liquidia's openness to using documents produced in previous litigations ignores the bulk of the burden from litigating separately. Both cases will have common fact and expert witnesses. (*Id.*) These witnesses, in separate trials, will have to testify twice, to different juries, during separately scheduled trials on the Court's calendar. One trial will reduce the burden on the parties, conserve judicial resources, and reduce the total time and expenses, all issues that the cross-use of documents fails to address in any way.

## II. Consolidation Warrants Staying this Case Pending the '494 Action Stay

UTC seeks to stay the '782 Action so that it can be adjudicated alongside Liquidia's '494 patent. (Motion at 2, 13.) UTC is not seeking an independent stay absent consolidation, and certainly is not seeking "to avoid litigating" Liquidia's infringement. (D.E. 89 at 21.) None of Liquidia's cases foreclose a stay. Liquidia cites *Wilmington Trust*, asserting that it denied a stay "under circumstances similar to those here." (D.E. 89 at 21 (citing *Wilmington Trust, Nat. Assn'n v. Nat. Gen. Ins.*, 2021 WL 2531063 (M.D.N.C. June 21, 2021)).) But *Wilmington* is far from dispositive and does not address the propriety of a stay when two claims for infringement are consolidated in one matter that absent a stay

11

would result in duplicative work and set the two consolidated claims on different schedules. *Arnold* similarly fails because it does not even concern a request for stay and requires "serious prejudice," a bar Liquidia falls far short of. *Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983) (en banc).

While citing inapposite and dissimilar cases, Liquidia fails to address UTC's cases demonstrating that courts routinely grant stays under similar circumstances. (*See, e.g.*, Motion at 13 (citing *Ho Keung Tse v. Apple, Inc.*, 2013 WL 451639 (N.D. Cal. Feb. 5, 2013)).) The *Ho Keung* court consolidated two patent infringement cases involving different accused products and services and stayed both cases pursuant to the stay in the previously unconsolidated lead case. *Ho Keung*, 2013 WL 451639, at *3-4. Other courts have similarly found it prudent to adjudicate claims consolidated into a single case pursuant to the same schedule. *See, e.g.*, *DivX v. Hulu*, 2021 WL 6499935, at *1 (C.D. Cal. Oct. 6, 2021) (consolidating and staying patent case where one matter was previously stayed). If the Court grants UTC's request to consolidate the '782 Action with the '494 Action, it should also enter a stay to put both cases on the same schedule.

## **CONCLUSION**

For the reasons explained above, UTC requests that the Court consolidate the '782 and '494 Actions through trial and stay proceedings in the '782 Action until the '494 Action stay is lifted.

12

This the 27th day of February, 2026.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, L.L.P.

/s/ *DRAFT*
Christopher G. Smith
N.C. State Bar No. 22767
David A. Pasley
N.C. State Bar No. 52332
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com
      dpasley@smithlaw.com

William C. Jackson
D.C. Bar. No. 475200
Goodwin Procter LLP
1900 N Street, NW
Washington, DC 20001
Telephone: (202) 346-4000
Email: WJackson@goodwinlaw.com

Douglas H. Carsten
CA. Bar No. 198467
McDermott Will & Schulte LLP
12636 High Bluff Drive, Suite 325
San Diego, CA 92130
Telephone: (619) 467-1802
Email: Dcarsten@mwe.com

*Attorneys for United Therapeutics Corporation*

13

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this brief is in compliance with Rule 7.3(d)(1) of the Local Rules for the Middle District of North Carolina, in that it contains less than 3,125 words, excluding the portions of the brief covered by Local Rule 7.3(d).

Date: February 27, 2026

/s/ *DRAFT*
Christopher G. Smith
N.C. State Bar No. 22767
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P.
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-6745
Email: csmith@smithlaw.com

*Attorneys for United Therapeutics Corporation*

## CERTIFICATE OF SERVICE

I herby certify that the foregoing document was filed with the Court using the CM/ECF system, which electronically served all counsel of record.

Date: February 27, 2026

                                             /s/ *DRAFT*
                                             Christopher G. Smith
                                             N.C. State Bar No. 22767
                                             SMITH, ANDERSON, BLOUNT, DORSETT,
                                             MITCHELL & JERNIGAN, L.L.P.
                                             Post Office Box 2611
                                             Raleigh, North Carolina 27602-2611
                                             Telephone: (919) 821-6745
                                             Email: csmith@smithlaw.com

                                             *Attorneys for United Therapeutics Corporation*

15

Case 1:25-cv-00368-TDS-JGM    Document 90    Filed 02/27/26    Page 19 of 19