IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED THERAPEUTICS          )
CORPORATION,                 )
                             )
        Plaintiff,           )
                             )
    v.                       )        1:25cv00368
                             )
LIQUIDIA TECHNOLOGIES, INC., )
                             )
        Defendant.           )
_____)

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

This patent infringement case is before the court on the motion to consolidate and stay proceedings by Plaintiff United Therapeutics Corporation ("UTC"). (Docs. 83, 84.) Defendant Liquidia Technologies, Inc. ("Liquidia") has filed a response in opposition (Doc. 89), and UTC has replied (Doc. 90). For the reasons set forth below, UTC's motion will be denied without prejudice.

**I.   BACKGROUND**

UTC is a biotechnology company that researches and develops "treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other orphan diseases." (Doc. 1 ¶ 3.) It markets Tyvaso (treprostinil) inhalation solution and Tyvaso DPI (treprostinil) inhalation powder for use in patients with pulmonary arterial hypertension ("PAH") and pulmonary hypertension

associated with interstitial lung disease ("PH-ILD").  (Id. ¶¶ 2, 12.)  Liquidia, meanwhile, markets Yutrepia, which is a dry powder formulation of treprostinil approved also for use with PAH and PH-ILD patients.  (Id. ¶ 30.)

On April 21, 2025, Liquidia filed an action in this court to assert U.S. Patent No. 10,898,494 (the "'494 patent") against UTC (the "'494 case").  (See Doc. 1 in case number 1:25-CV-00299.) Liquidia alleges that UTC's Tyvaso DPI product infringes Liquidia's '494 patent.  (Id.)  Then, on May 9, 2025, UTC filed the present action in this court to assert U.S. Patent No. 11,357,782 (the "'782 patent") against Liquidia.  (See Doc. 1.) UTC alleges that Liquidia's Yutrepia product infringes UTC's '782 patent.  (Id.)

On November 17, 2025, at UTC's request, this court orally entered a six-month stay of the '494 case, set to expire automatically.  (Doc. 76 at 72:19-21.)  The court found that the parties' related breach of contract action in North Carolina Business Court "may have a significant effect on the current federal litigation" if the Supreme Court of North Carolina granted Liquidia's petition for a writ of certiorari and then granted Liquidia's motion to dismiss the breach of contract action.  (Id. at 71:24-72:8.)  Since then, Liquidia has updated the court that the Supreme Court of North Carolina denied the petition for a writ of certiorari on December 16, 2025.  (Doc. 43 in case number 1:25-

2

CV-00299.)  The breach of contract action now proceeds in North Carolina Business Court, and Liquidia was required to file its answer in that case by January 31, 2026.  (Id. at 1.)

On January 23, 2026, UTC filed the present motion to consolidate the present case with the '494 case.  (Docs. 83, 84.) UTC also seeks to stay the present case in accordance with the six-month stay of the '494 case, which is set to expire automatically on May 17, 2026.  (Id.)  The motion is now fully briefed and ready for decision.

## II.  ANALYSIS

### A. Standard of Review

"If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  To properly apply Rule 42(a), the district court must

> determine "whether the specific risks of prejudice and possible confusion" from consolidation "were overborne by the risk of inconsistent adjudications . . . , the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

Campbell v. Bos. Sci. Corp., 882 F.3d 70, 74 (4th Cir. 2018) (alteration in original) (quoting Arnold v. E. Air Lines, Inc.,

3

681 F.2d 186, 193 (4th Cir. 1982)).

Further, "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Maryland v. Universal Elections, Inc., 729 F.3d 370, 379 (4th Cir. 2013) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). Whether to grant a motion to stay lies within the discretion of the trial judge, who must "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." United States v. Ga. Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977) (per curiam). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

**B.  Whether the Court Should Consolidate the Cases**

**1.  Common Questions of Law or Fact**

UTC contends that the two cases present extensive factual overlap because they both involve dry powder formulations of treprostinil for use with pulmonary hypertension patients. (Doc. 84 at 9.) According to UTC, the '782 patent and the '494 patent share a common inventor along with similar patent claims. (Id.) UTC further asserts that the accused products, Tyvaso DPI and Yutrepia, both comprise a dry powder formulation of treprostinil,

4

use a dry powder inhaler for administration, are approved for the same indications, and relied on overlapping clinical trials. (Id. at 9-10.) Finally, UTC argues the two cases share common questions of law regarding issues of patent invalidity based on alleged prior art. (Id. at 11.)

Liquidia counters that the asserted patents "markedly differ" because they have different disclosures, different alleged priority dates, different inventors (with one exception) and different claims. (Doc. 89 at 15-16.) Liquidia asserts that the accused products differ in both their formulations and their characteristics. (Id. at 16-17.) Further, according to Liquidia, the possibility "[t]hat certain witnesses may testify on general overlapping subject matter" in the two cases militates against consolidation because this possibility "confirms the substantial risk that the jury will conflate which parts of witnesses' testimony belong with each party's claims and defenses." (Id. at 19-20.) Finally, Liquidia contends that the presumption of each patent's independent validity refutes UTC's argument that a finding of one patent's invalidity based on prior art would undercut the other patent's validity. (Id. at 21.)

In its brief in support, UTC cites Pactiv Corp. v. Multisorb Technologies, Inc., No. 10 C 461, 2011 WL 686813, at *3 (N.D. Ill. Feb. 15, 2011), and Abbott Diabetes Care, Inc. v. Dexcom, Inc., C.A. No. 06-514, 2007 WL 2892707, at *4 (D. Del. Sep. 30, 2007),

5

for the proposition that courts consolidate cases "[e]ven where there are fewer overlapping factual and legal issues than here." (Doc. 84 at 11.)  But as Liquidia rightly contends, the consolidated actions in both cases involved the same party asserting its patents against the same accused product.  See Pactiv, 2011 WL 686813, at *1; Abbott, 2007 WL 2892707, at *1. Here, on the other hand, Liquidia asserts its patent against UTC's Tyvaso DPI in the '494 case, while UTC asserts its patent against Liquidia's Yutrepia in the present case.

In its reply brief, UTC further cites Koninklijke Philips N.V. v. Zoll Medical Corp., 656 F. App'x 504, 510 (Fed. Cir. 2016), Finjan Software, Ltd. v. Secure Computing Corp., C.A. No. 06-369, 2009 WL 2524495, at *1-2 (D. Del. Aug. 18, 2009), aff'd in part, rev'd in part, 626 F.3d 1197 (Fed. Cir. 2010), and Lashify, Inc. v. Urban Dollz LLC, No. CV 22-6148, 2024 WL 1136129, at *7-8 (C.D. Cal. Feb. 13, 2024), to demonstrate that courts routinely permit defendants to assert their own patents against the plaintiffs' products as counterclaims in a single lawsuit.  (Doc. 90 at 8-10.) Thus, according to UTC, juries are perfectly capable of understanding the complexities of different patents asserted by different parties against different products.  (Id.)

Here, it may be that the two cases present common questions of law or fact.  Tyvaso DPI and Yutrepia are similar products in that they both constitute dry powder treprostinil inhalers

6

indicated to treat patients with PAH and PH-ILD.  Further, even a cursory review of each patent's claims, which Liquidia provides in its response brief, demonstrates clear similarities between the two patents.  (See Doc. 89 at 10.)  As the court previously noted in its order denying Liquidia's motion to dismiss, Liquidia even relied on clinical studies conducted by UTC in its New Drug Application for Yutrepia.  (Doc. 80 at 4.)  And finally, much of the prior art for UTC's '782 patent – as well as perhaps the '782 patent itself – will likely be relevant prior art for Liquidia's '494 patent.

Nevertheless, these common questions of law and fact only satisfy the threshold question of whether the court may consolidate the cases pursuant to Rule 42(a).  Thus, the court will now turn to the relevant factors to determine whether it should consolidate these cases.

### 2.    The Fourth Circuit's Consolidation Factors

UTC next contends that the factors support consolidation because "consolidation presents no risk of prejudice or confusion."  (Doc. 84 at 12.)  According to UTC, the same law will govern both parties' infringement claims, and Liquidia's only argument for prejudice has been contradicted by the successful launch of Yutrepia.  (Id. at 12-13.)  UTC further asserts that the two cases pose a risk of inconsistent claim construction in addition to inconsistent outcomes on the validity of the patents.

(Id. at 14-15.) For example, Liquidia may argue for a broad interpretation of alleged prior art to invalidate UTC's '782 patent while arguing for a narrow interpretation of this same art for its own '494 patent. (Id. at 15.) And finally, UTC argues that the cases present substantial overlap in written discovery and testimony. (Id. at 15-16.)

Liquidia counters that consolidation would "magnify potential for confusion" because of the complexity and superficial similarities between the two parties' claims. (Doc. 89 at 22-23.) Moreover, Liquidia argues that the risk of confusion prejudices it by creating an unwarranted possibility that the outcome of its claims could rest in part on the outcome of UTC's claims. (Id. at 23.) Liquidia also points to the possibility that the present case could be stayed in conjunction with the '494 case if consolidated (id. at 24), and it downplays the potential for inconsistent positions and outcomes because "[a] particular term used in one patent need not have the same meaning when used in an entirely separate patent" (id. at 25 (quoting Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1318 (Fed. Cir. 2005))). Lastly, Liquidia offers to enter a cross-use agreement for the two cases to "relieve any burdens due to duplicative discovery." (Id. at 26.)

As Liquidia rightly argues, courts have found that discovery cross-use agreements "reduce the risk of any duplicative

8

discovery" and weigh against pre-trial consolidation of patent infringement cases. See, e.g., SiOnyx, LLC v. Samsung Elecs., Co., No. 24-CV-00408, 2024 WL 4007808, at *4 (E.D. Tex. Aug. 30, 2024). And as to the risk of inconsistent claim construction, the court agrees with Liquidia that claims need not be interpreted consistently. See Trs. of Columbia Univ. in N.Y. v. Symantec Corp., 811 F.3d 1359, 1369 (Fed. Cir. 2016) (noting "that there is no reason why the construction of claim terms . . . should be the same" where the asserted patents "comprise two separate families, and these two families of patents claim two different inventions, list only one inventor in common, were filed years apart, and do not result from the same patent application"). Indeed, in its reply brief, UTC disavows any argument "that the [c]ourt must construe claim terms in the two patents the same." (Doc. 90 at 14.)

Moreover, as to the risk of possible confusion, the court also agrees with Liquidia that UTC has not sufficiently demonstrated that this risk is overborne by other factors favoring consolidation. Liquidia provides three unpublished opinions where the court denied consolidation in part because of the unwarranted complexity that would result from combining two already complicated patent infringement cases. (See Docs. 89-10, 89-11, 89-12.) In fact, one court even severed the counterclaims to avoid overcomplication (see Doc. 89-10), while another court noted that

9

it "regularly" severs patent infringement counterclaims for trial to avoid confusing the jury (see Doc. 89-12). Here, the fact remains that these two cases involve two different parties asserting two different patents against two different products. It thus remains uncertain whether "it is in the interests of justice to take what is an already extremely complex subject matter . . . and to combine it with another complex subject matter just because some of the technology discussion will be similar or the same." (See Doc. 89-12 at 2.)

Accordingly, at this stage and considering Liquidia's willingness to enter into a cross-use agreement along with the independence of the relevant patent claims, the court finds that the risk of possible confusion outweighs any benefit of pre-trial consolidation. The court will therefore deny UTC's motion to consolidate without prejudice, with the potential to revisit the issue once the parties complete discovery.

## C. Whether the Court Should Stay the Present Case

UTC's argument for staying the present case depends entirely on first consolidating it with the stayed '494 case. Indeed, according to its reply brief, "UTC is not seeking an independent stay absent consolidation." (See Doc. 90 at 15.) Because the court declines to consolidate the cases, it will therefore deny UTC's request to stay proceedings.

10

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendant UTC's motion to consolidate and stay proceedings (Doc. 83) is DENIED WITHOUT PREJUDICE.

/s/    Thomas D. Schroeder
United States District Judge

April 20, 2026